## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| JOY J. HERNANDEZ-BUTLER | ) | CASE NO.: 1:17-cv-00068 |
| | ) | |
| Plaintiff, | ) | JUDGE TIMOTHY S. BLACK |
| | ) | |
| vs. | ) | |
| | ) | **REPLY IN SUPPORT OF MOTION FOR** |
| IKEA U.S. EAST, LLC, et al. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

## I.      INTRODUCTION

Negligence is never presumed, and must be proven. Speculation and conjecture are not enough for Plaintiff to create a genuine issue of material fact; she must point to admissible evidence sufficient for a jury to find in her favor. However, nothing in Plaintiff's Memorandum in Opposition would be sufficient for a jury to find IKEA negligent or liable for her alleged injuries, meaning IKEA's Motion for Summary Judgment should be granted.

## II.     THERE IS NO EVIDENCE OF WHAT CAUSED THE BOX TO FALL

The central problem with Plaintiff's case is that there is simply no evidence of what caused the Ektorp sofa box to fall in Plaintiff's direction. The occurrence of an accident, standing alone does not establish negligence. *Green v. Castronova*, 9 Ohio App.2d 156, 162 (1966). One must show what caused the injury in order to prove negligence. *Stamper v. Middletown Hosp. Assn.*, 65 Ohio App.3d 65, 67-68 (1989). The Ohio Supreme Court held that "[i]t is incumbent on the plaintiff to show how and why an injury occurred—to develop facts from which it can be determined by the jury that

the defendant failed to exercise due care and that the failure caused the injury." *Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381, 389 (1950).

In a retail environment, items may become loose or shift positions. "Where the plaintiff, either personally or by outside witnesses, cannot identify what caused the fall, a finding of negligence on the part of the defendant is precluded.'" *Harshaw v. Trotwood Foodtown, Inc.*, 2d Dist. Montgomery No. 15125, 1996 Ohio App. LEXIS 452, 1996 WL 74702, *1 (Jan. 24, 1996) (quoting *Stamper v. Middletown Hosp. Ass'n*, 65 Ohio App. 3d 65, 68-69, 582 N.E.2d 1040 (12th Dist. 1989)).

Here, Plaintiff has offered no explanation of what caused the box to fall. Plaintiff's own expert opined at page 4 of his report that "[t]here is presently no evidence or testimony that indicates the cause of the incident box tipping over into Ms. Hernandez." Doc. # 25-13. This is fatal to the Plaintiff's case and becomes a clean, undisputed fact in this case.

## III. PLAINTIFF WAS INJURED BY AN OPEN AND OBVIOUS CONDITION

### A. In a Retail Environment, it is Open and Obvious that Boxes may Fall.

Plaintiff's claims must fail for the added reason that any condition that may have caused her injury was open and obvious. In Opposition, Plaintiff points to Gallinger's testimony at his second deposition that he could not see that the boxes were protruding past the edge of the pallet. Thus, she claims this overhang was "concealed." This argument misconstrues the open-and-obvious doctrine. It is open and obvious that, when products are made available for purchase by the public, it is possible that moving one box may cause others to fall. This is true regardless of the position of the precise boxes at issue, and it precludes Plaintiff from recovery.

2

Ohio case law supports IKEA's arguments. As discussed in the Motion, the instant case is very similar to an Ohio case called *McGee v. Lowe's Home Ctrs.*, 2007-Ohio-4981 (Ct. App. 7th Dist.). In, *McGee*, the plaintiff was shopping for vinyl sheet flooring at a Lowe's store. *Id.* at ¶ 3. The flooring was  arranged vertically on the shelf, with a bar to keep it upright. *Id.* When she attempted to remove the flooring she wished to purchase, the flooring on display began to fall, causing her injuries. *Id.* The Court found on these facts that the condition was open and obvious. The Court also noted that "in a warehouse self-help environment, there always remains a possibility that too much fumbling around through merchandise can create an unstable situation where items may become loose or shift positions." *Id.* at ¶ 17.

The case of *Hupp v. Meijer Stores Ltd. Partnerships*, 2006-Ohio-2051 (Ct. App. 5th Dist.) is perhaps even more on point. In *Hupp*, the plaintiff was shopping for a rug in a "self-help" store. The rugs were arranged vertically. The plaintiff removed a rug and lowered it onto her cart. As she was bent over, another rug fell from the display and struck her, causing personal injuries. The rug grabbed by the plaintiff was not in physical contact with the rug that struck her, as a result of which the Plaintiff could only speculate that her removal of one rug jostled the display and caused another rug to fall. *McGee*, at ¶ 18 (discussing the holding in *Hupp*). On these facts, the Fifth District Court of Appeals held that any danger posed by the rug display was open and obvious. *Id.*

Many other Ohio cases have applied the Open and Obvious Doctrine to bar recovery in situations involving falling merchandise.[1]  These cases demonstrate that in

---

[1] *Goodwin v. Marc Glassman, Inc.*, 2000 Ohio App. LEXIS 3093 (Ohio Ct. App., Summit County July 12, 2000) (customer pulled a cereal box from a display, causing them to fall onto her).  . *Lazzara v. Marc Glassman, Inc.*, 107 Ohio App. 3d 163 (Ohio Ct. App., Cuyahoga County 1995) (customer removed a package of tissue from a stack, causing the stack to fall on her). *See also Sexton v. Wal-Mart Stores, Inc.*, 1999 Ohio App. LEXIS 216 (Ohio Ct. App., Scioto County Jan. 14, 1999) (customer reached onto a shelf to pull a box of detergent down and two other boxes fell off of the shelf and hit her in the head); *Bonner v. Marc Glassman, Inc.*, 2012-Ohio-86 (Ohio Ct. App.,

Ohio, Courts recognize that in areas where products are made available for purchase by the public, those products may shift, move, or even fall, and this risk is open and obvious to consumers. Where, as here, merchandise are made available for purchase in a retail setting from shelves or bins, this arrangement is the open and obvious condition, in and of itself, which serves as the warning that items may shift or fall. *McGee v. Lowe's Home Ctrs.*, 2007-Ohio-4981, at ¶¶ 16-17 (7th Dist. App.).

Plaintiff relies heavily on Gary Gallinger's testimony from his second deposition in support of her claims. However, this second deposition contradicts what was in his first deposition, and indeed the prior recorded statement, meaning it should be stricken or disregarded. *See* Motion to Strike, filed concurrently herewith; *see also* Gallinger Evolution Graph, attached hereto as Exhibit A. In his recorded statement, he admitted the aisle was clear and he saw the pallets and the boxes, which is inconsistent with his later claim that he did not see the pallets until after the boxes fall. Gallinger Recorded Statement, Doc. # 25-1, at pp. 2-3. Later in the Statement, he claimed that he put the box back on the pallet after it fall, and only noticed then that the whole row was overhanging the pallet. This does not make sense, because at this point, one of the boxes had been removed. *Id.*

The debate over Gary Gallinger's testimony is, ultimately, a distraction from this key point. This is a simple and straightforward case. The Plaintiff and Gallinger approached an aisle, and with no diversion or distraction, observed and appreciated pallets, bins, and products for purchase. Gallinger Recorded Statement, Doc. # 25-1 at p. 2, Plaintiff Depo., Doc # 22-1, at p. 157. There is no evidence that anything overhung

Cuyahoga County Jan. 12, 2012) (customer went to retrieve water from a stack of water cases and two upper cases fell down from above and onto him).

4

anything when they approached the aisle, and indeed, there is no evidence that IKEA knew that anything overhung anything

In his recorded statement, Gallinger affirmed the stability of what he saw, affirmed that he was able to distinguish boxes and pallets, which corroborates what Hernandez said, *See* Plaintiff Depo., Doc. # 22-1, at pp. 157-58 and affirmed, again in his own statement, that a customer, not someone from IKEA, told them that they had to pick up the items from the bin for purchase. Gallinger Recorded Statement, Doc. # 25-1, at pp. 2, 4, 5.

The simple and straightforward facts are that if there is any confusion, the confusion comes from multiple different scenarios of what happened from either of the Plaintiff or Gallinger, But the one unifying thread is that no one knows what caused a sofa box to fall. Neither Plaintiff nor Gallinger offer an explanation.Indeed, the testimony and statements of Gallinger are so confusing and so unreliable that the statements could not even serve as creating a genuine issue of material fact because Gallinger's testimony shifts as to conditions, as to which box fell, and otherwise. *See* Gallinger Evolution Graph, attached hereto as Exhibit A. As demonstrated in the attached Exhibit, Gallinger has given contradictory statements regarding which box he and Plaintiff selected, whether he was able to observe pallets before the accident, whether they spoke to an IKEA employee, and the extent of the alleged overhand, among other issues.

A witness's testimony cannot create a genuine issue of fact when it is so unreliable that no reasonable juror could believe it. *Bouche v. City of Mt. Vernon*, 2013

U.S. Dist. LEXIS 11424, at *24 n. 79 (S.D.N.Y. Jan. 28, 2013).[2] Gallinger's various versions of his story are too contradictory for a reasonable juror to believe any one of them. Even if any version of Gallinger's story were credited as true, however, Plaintiff still cannot prevail, because she cannot prove what caused her accident.

Indeed, whether Gallinger, or Plaintiff for that matter, actually saw the overhang before the accident is legally irrelevant. A hazard need not actually be *seen* in order to open and obvious; instead, it must only be capable of being seen upon an ordinary inspection. *Armstrong v. Best Buy Co.*, 99 Ohio St. 3d 79, 80 (Sup. Ct. 2003). Here, if there was a hazard, it would have been visible.

Plaintiff testified at her deposition that nothing seemed out of place when they were in the aisle approaching the Ektorp sofa:

> Q. Okay. As you -- was there any problems at any time in the store with the lighting conditions in your mind?
> **A. Nothing stood out to me. It was a warehouse.**
>
> Q.  Okay. Were the aisleways clear and open for you to walk on?
> **A.  Nothing stood out to me. There were people around, but it wasn't like falling over a pile of crap or something someplace.**

Plaintiff Deposition, Doc. # 22-1, at p. 149. As discussed in the Motion, Plaintiff and Gallinger both confirmed that nothing obstructed or interfered with their view of the Ektorp sofas. Therefore, if the boxes were in a dangerous position, it would have been clearly visible to both of them upon an ordinary inspection.

---

[2] While *Bouche* is not a Sixth Circuit case, it represents an application of the same principle announced in *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899 (6th Cir. 2006), which held that a party may not file an affidavit in opposition to summary judgment that contradicts his or her prior deposition testimony in order to create a "sham" issue of fact. By the same analysis, a non-party witness cannot create an issue of fact for the Plaintiff by changing his story to benefit her case. *Bouche v. City of Mt. Vernon*, 2013 U.S. Dist. LEXIS 11424, at *24 n. 79 (S.D.N.Y. Jan. 28, 2013).

### B.     There were no Attendant Circumstances.

Plaintiff's attendant circumstances argument is unavailing. "Attendant circumstances are factors that contribute to a fall and are beyond the injured person's control." *Kraft v. Johnny Biggs Mansfield, LLC*, 2012-Ohio-5502, at 16 (5th Dist. 2012). An attendant circumstance must be "so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise." *McConnell v. Margello*, 2007-Ohio-4860 (10th Dist. 2007). "The breadth of the attendant circumstances exception does not encompass the common or the ordinary." *Cooper v. Meijer Stores L.P.*, 2007-Ohio-6086 (10th Dist. 2007).

Here, there was no circumstance beyond Plaintiff's control that would have reduced her degree of care, nor is reaching for a box an abnormal circumstance. Instead, it is common and ordinary, and does not excuse Plaintiff from being aware of open and obvious hazards. No Ohio case law supports the idea that reaching for a box is an attendant circumstance that negates the open and obvious doctrine.[3] Even if it were, the position of the box was an obvious condition as Plaintiff and Gallinger approached the boxes, before this supposed attendant circumstance arose. Therefore, the doctrine of attendant circumstances does not benefit Plaintiff in this case.

## IV.     THE FERGUSON CASE IS DISTINGUISHABLE FROM THIS CASE

### A.     The Facts and Circumstances of Ferguson were Different from Hernandez.

Much has been made about the Ferguson case. However, Ferguson is fundamentally different than this case for ten reasons:

First, Ferguson and Hernandez were in different locations, *see* photos from *Ferguson* case, attached hereto as Exhibit B;

---

[3] Plaintiff does not cite such a case, and IKEA has been unable to find one.

Second, Ferguson and Hernandez were separated by 1,273 days, *see* Incident Report from Ferguson, Doc. # 25-14;

Third, the conditions encountered by Ferguson and Hernandez were different in that the number of sofas encountered in the bin were different in number, *see* Deposition of Dayna Ferguson, attached hereto as Exhibit C, at p. 151;

Fourth, the Ferguson Plaintiff was not making, or attempting to make, an Ektorp purchase, *see id.* at p. 131;

Fifth, the Ferguson Plaintiff was not attempting to take a boxed sofa from the bin, either by herself, or with others, *see id.*;

Sixth, the Ferguson aisle faced a showroom, which the Hernandez aisle did not, *see id.* at p. 142;

Seventh, apparently there was only one Ektorp sofa left on the racking in Ferguson, and Ferguson sat on a pallet in the racking in the aisle, *see id.* at p. 151;

Eighth, immediately across the racking in Ferguson, there was furniture and other items to sit upon, *see* deposition of Anna Carroll from *Ferguson*, attached hereto as Exhibit D, at p. 80;

Ninth, Keith McCrady testified that pallets are never to be sat upon, and that it is a piece of equipment that Ferguson sat on, *see* deposition of Keith McCrady from *Ferguson*, attached hereto as Exhibit E, at p. 75;

Tenth, sitting on a piece of equipment, as in Ferguson, is the hazard, and not the position of the boxed furniture.

Finally, a state court granted IKEA summary judgment, in part, on these facts, and so compelling was the decision that Plaintiff did not even appeal.

Both Anna Carroll and Keith McCrady testified in Ferguson, and relevant extracts show why Ferguson and Hernandez are fundamentally different. Mr. McCrady testified that the Ferguson accident was the result of Ms. Ferguson's inappropriate decision to sit on a pallet:

> Q. Based on your understanding of how the Dayna Ferguson accident occurred, is it ever appropriate—
> **A. No.**

8

> Q.      --for Dayna Ferguson to sit on that pallet?
> **A.      No.**
>
> Q.      And indeed is a pallet something to sit on in the IKEA store?
> **A.      No.**
>
> Q.      Was there anything concealing or limiting the ability to see the sofa sitting atop the pallet as shown in the Plaintiff's Exhibit 1?
> **A.      No.**

Deposition of McCrady Depo. from *Ferguson*, Exhibit E, at p. 75. Anna Carroll testified that this matter involved a customer's decision to sit on a pallet, which was not something IKEA had experienced previously:

> Q.      And again, based upon your experience, have you ever had occasion when a customer became injured in the same way that Dayna Ferguson did?
> **A.      No.**
>
> Q.      Are you aware of any incidents before Dayna Ferguson's accident where you were aware of a customer sitting in the same manner or way that Dayna Ferguson was sitting?
> **A.      No.**
>
> Q.      Had there been any complaints before this incident of any customers sitting on pallets?
> **A.      No.**
>
> Q.      Or co-workers sitting on pallets?
> **A.      No.**

Carroll Depo. from *Ferguson*, Exhibit D, at p. 112. Ms. Ferguson's testimony also underscores that her incident was wholly different:

> Q.      Okay. After [your friends] had gone to the clearance section, was it your intention at that point to sit down?
> **A.      Yes. They had gone to look at a dresser, a clearance dresser, and it was going to be cheaper than the one we had picked out at that time for Jesse, and I knew that they were going to be a while looking at it and mentally comparing whether or not they were going to purchase that one over the other.**

9

> **And whilst I couldn't see them, I was extraordinarily tired, and I had looked for an appropriate place to sit down such as a chair. And not seeing one, I saw what I wholeheartedly believed to be an empty pallet and I sat down.**
> **. . . .**
> **A.     Yes. I sat down for a brief moment and closed my eyes, and then I saw that there was dirt on the floor, though, and I had sat my purse to the right of me. And I had gone to move it off the floor so it didn't get dirty, and then I remember excruciating pain.**

Deposition of Dayna Ferguson, attached hereto as Exhibit C, at p. 131, 141.

As the foregoing evidence and testimony demonstrates, Ms. Ferguson's incident was totally different from the Plaintiff's incident. Accordingly, it was not notice to IKEA of the possibility that four years later, an Ektorp sofa box would fall and strike anyone. The *Ferguson* matter is therefore irrelevant to this case.

Plaintiff also attaches portions of Paul Johnson's testimony from this case, but these excerpts do not advance her claims here, either. She notes that Mr. Johnson testifies that the Ektorp boxes were stored in the same fashion at the time of both the Ferguson and Hernandez incidents, a fact that is not disputed. She also notes that Mr. Johnson did not know exactly what caused the box to fall, but she omits the fact that Ms. Ferguson sat on a pallet, and this was identified in the incident report, and in Mr. Johnson's testimony, as the likely cause of the accident. *See* Deposition of Paul Johnson, attached hereto as Exhibit F, at p. 8 ("From [Ms. Ferguson] sitting on the pallet, it caused a couch to fall and strike her."). No matter how the facts are spun, Ferguson is distinct from this case.

10

**B.** **Evidence from Ferguson Reinforces IKEA's Open-and-Obvious Defense in this Case.**

Plaintiff cites portions of Ms. Ferguson's deposition testimony indicating she saw no instability in the pallet before she sat down, but Ms. Ferguson also testified that the area was clear, with no distractions, and nothing interfering with her ability to view and distinguish the merchandise from the aisleways. Ferguson Depo., Exhibit C, at pp. 127-28. Therefore, Ferguson's testimony also does not help Plaintiff's open-and-obvious argument.

The testimony and evidence also reinforces IKEA's defenses in this action. For example, Anna Carroll testified that the box and pallet was open and obvious:

> Q.	Is the box that contains the sofa, is it a large box?
> **A.	Yes.**
>
> Q.	And is it a box that is recognizable as a box?
> **A.	Yes.**
>
> Q.	And would there be anything obstructing or concealing the box from the view of a customer?
> **A.	No.**
>
> Q.	And, in fact, you want the customer to see the box?
> **A.	Correct.**
>
> Q.	And why is that?
> **A.	Because it is a self-serve furniture area, so that is part of our Ikea concept. The customers are able to select and choose the items they want to purchase, write them down on a shopping list, and then come to the self-serve warehouse, get a cart, and remove the items from the bin themselves.**
>
> Q.	So a customer would have to see the item, correct?
> **A.	Yes.**
>
> Q.	Touch the item?
> **A.	Yes.**
>
> Q.	Read what's on the box?
> **A.	Yes.**

11

> Q.      And retrieve it?
> **A.      Yes.**
>
> Q.      And is that an obvious thing there?
> **A.      Yes.**

Carroll Depo., Ex. D, at p. 113-14. This testimony demonstrates how the arrangement of the boxes for purchase is both obvious and consistent with the IKEA experience.

## V.      IKEA HAD NO NOTICE OF ANY ISSUE WITH THE EKTORP SOFAS

Plaintiff argues that IKEA had notice of the condition that harmed the Plaintiff, based on various theories. Plaintiff's arguments fail, because the prior incidents they offer are irrelevant and/or inadmissible, there is no evidence IKEA created the condition, and there is no evidence IKEA had notice of the condition.

### A.      Prior Incidents

The prior Ferguson incident is irrelevant, for the reasons discussed above. The alleged prior incident in the IKEA store in Seattle, WA also does not assist the Plaintiff for multiple reasons. First, as noted in the Motion to Strike, filed concurrently herewith, the incident report filed by the Plaintiff for this incident is inadmissible. The Report is hearsay not within any exception, and there is no foundation to establish that it was substantially similar to Plaintiff's accident, which is a necessary prerequisite to its admissibility.[4] The incident in Seattle also occurred 936 days before Plaintiff's accident, meaning it is remote in time and space from Plaintiff's accident.

The IKEA store in Seattle was also owned and operated by a different corporate entity than the West Chester store, namely IKEA US West, Inc. IKEA will supplement this Reply with a Declaration to that effect. If that incident were deemed to be notice to

---

[4] *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 297 (6th Cir. 2007). Plaintiff questions IKEA's reliance on *Surles*, but IKEA cited this case solely for the following proposition: "Only prior incidents that are 'substantially similar' to the one at issue will be admissible in evidence." *Id.* Under the authority of *Surles*, if a prior incident is not substantially similar, it is not admissible. *Id.* The facts of *Surles* are otherwise totally distinct from the instant case and thus not relevant.

the West Chester IKEA, then that would in effect require West Chester to be aware of every incident in America. That is not supported by any case IKEA has been able to locate. Instead, the law only deems IKEA to be on constructive notice of a hazard if it has persisted *at the store where plaintiff was injured* for a sufficient length of time. *See, e.g.*, *Taylor v. K-Mart Store,* 2007 Ohio 2094 (2d Dist.).

Even if the Seattle incident were considered relevant and admissible, this would still not place IKEA on notice of any systemic or widespread hazard pertaining to IKEA sofas. Since the middle of 2014, IKEA sold over 1 million Ektorp sofas in the United States. This fact will be supplemented by a Declaration to this effect. The occurrence of two prior incidents nationwide pertaining to Ektorp sofas falls far short of placing IKEA on notice of any persistent issue with storage or purchase of Ektorp sofas. Where, as here, an alleged hazard is preceded by an event remote in time, in location, and without any connection to the hazard, that event cannot, as a matter of law, establish either actual or constructive notice of a dangerous, defective, or deleterious condition. *See Robinson v. Goldman*, 1981 Ohio App. LEXIS 14222, at *11 (12th Dist.) (holding that evidence of a prior accident may only be admitted "provided . . . that its relevancy is not destroyed by its being so remote as to defeat the inference of persistence of the dangerous condition to the time of subsequent injury").

### B.    <u>IKEA did not Create a Hazardous Condition.</u>

There is no evidence IKEA created any hazard. While it is true that IKEA stocks and loads the pallets, during shopping hours customers are free to move the boxes around. This is the entire point of the IKEA experience. The last person to move the box that struck Plaintiff may have been a customer, not an employee. Thus, IKEA cannot be liable on a theory that they created a hazardous condition, because there is no evidence

they did so. When a plaintiff offers "no evidence of a [store's] negligence beyond speculation and the fact that the injury occurred, [the plaintiff's] argument that [the store] had superior knowledge of the dangerous condition because it created the display is meritless." *Lacy v. Wal-Mart Stores, Inc.* 2012-Ohio-1690, at 37 (7th Dist.).

### C.   <u>IKEA had no Actual Notice of a Hazard.</u>

Plaintiff contends that IKEA had actual notice of the condition because an IKEA employee pointed out the Ektorp sofas to the Plaintiff. This argument actually undercuts Plaintiff's case. If the employee should have had notice of a hazard by merely looking at the boxes, then Plaintiff (and Gallinger) should also have had such notice by looking at the boxes. In other words, if the situation was so obviously dangerous that the employee should have noticed something amiss, this would mean it was an open and obvious condition for which IKEA cannot be liable.

The testimony regarding the purported IKEA employee is also inconsistent and has evolved as this case progressed. In his recorded statement, Gallinger did not even mention speaking to an employee. He said only that they had looked for an employee, didn't find one, then started to load the box themselves. Gallinger Recorded Statement, Doc. # 25-1, at pp. 4-5. In her deposition, Plaintiff testified that she located an IKEA employee and asked her to verify that she had found the right box. The employee pointed out the correct box, and Plaintiff says that she said thank you and the employee left. Plaintiff did not mention that they asked for help or were even thinking of asking for help. Plaintiff Deposition, Doc. # 22-1, at p. 152-53.

Both Plaintiff and Gallinger subsequently changed their stories. In his first deposition, Gallinger testified that they spoke to an employee who pointed out where the Ektorp sofa was, and then Gallinger claims that person disappeared before he could ask

for help. Gallinger First Deposition, Doc. # 23-1, at p. 80. Plaintiff told her expert, Kevin Rider, in a telephone conversation that the IKEA employee "did not offer assistance, and then left." Rider Report, Doc. # 25-13, at p. 4. This detail about "not offering assistance" is a departure from her deposition testimony. Regardless, however, the discussion of this purported IKEA employee does not create any issue of material fact.

Plaintiff's arguments regarding the IKEA employee amount to speculation, because there is no evidence of who the employee was, or that such employee actually knew of a hazard. "'Actual notice' is defined as notice 'given directly to, or received personally by, a party.'" *Webster v. Shaw*, 2016-Ohio-1484, at ¶ 13 (3rd Dist. App.) (citation omitted). Where, as here, there is no evidence that IKEA was given or received notice of a hazard, there can be no finding of actual notice.

### D.    IKEA had no Constructive Notice of a Hazard.

Any argument for constructive notice must also fail, because there is no evidence of how long the allegedly hazardous condition, i.e. the box overhanging the pallet, existed. The entire purpose of the IKEA experience is that customers are encouraged and permitted to move, and ultimately purchase, merchandise. Therefore, a customer, and perhaps Plaintiff or Gallinger themselves, was most likely the last person to touch the box before it fell into the Plaintiff. On the other hand, it bears repeating that there is no actual evidence in the record of who last touched the boxes, or when that would have occurred. Thus, Plaintiff cannot establish how long the alleged hazard existed, meaning Plaintiff is precluded from establishing constructive notice under Ohio law.

Plaintiff's notice argument also has a proximate cause problem. As discussed above, there is no evidence in this case establishing what, exactly, caused the Ektorp sofa box to fall. In order to prevail on a notice argument, the plaintiff must establish not

only that a hazard existed, but that it caused the Plaintiff's injuries. *Motes v. Cleveland Clinic Found.*, 2012-Ohio-928, at ¶ 16 (8th Dist. App.). Plaintiff cannot do so here, meaning she cannot prevail.

Plaintiff's Opposition also fails to grapple with the fact that Ohio law does not permit admission of prior occurrences unless the alleged hazard is permanent in nature. *Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381, 386 (Sup. Ct. 1950). Evidence of prior occurrences which "relate[] to a temporary condition which might or might not exist from one day to the next" is not admissible. *Id.*

The alleged "hazard" giving rise to Plaintiff's accident was that the boxes of Ektorp sofas were overhanging the pallets, rendering them unstable. Even if this evidence were accepted by the jury, this would, by its nature, be a temporary hazard that may or may not exist from one day to the next. The warehouse area is open to the public and the public is invited to move the boxes in order to purchase them. Therefore, the positions of the boxes will naturally vary from day to day, and indeed from hour to hour.

In support of her notice argument, Plaintiff cites *Smith v. Frederick C. Smith Clinic*, 2010-Ohio-4548, ¶ 14, 189 Ohio App. 3d 473, 479, 939 N.E.2d 192, 196 (3rd Dist.). *Smith* is readily distinguishable.In *Smith*, a visitor to a clinic was injured when the automatic doors at the entrance to the clinic closed on her, causing her injuries. The plaintiff introduced evidence that another patron at the clinic had been injured in a similar fashion 19 months earlier, and the clinic had done nothing to investigate why the doors had malfunctioned in this manner. On these facts, the Court held that the incident 19 months earlier created a genuine issue of material fact regarding notice.

*Smith* is distinguishable, first because it involves a permanent condition, not a temporary condition. Doors are part of the structure of a building, not something that

will be moved or changed from day to day. Thus, under *Boles*, it was correct for the *Smith* Court to admit evidence of the prior occurrence, and it is correct for this Court to exclude the evidence of the *Ferguson* incident and the alleged Seattle incident. Doors remain affixed to the building. Boxes available for purchase do not.

*Smith* is also distinguishable, because in *Smith* the conditions leading to the prior accident were, in fact, the same as the conditions leading to the plaintiff's accident. That is not true here. The *Ferguson* accident occurred because a customer sat down on a pallet, causing a box to fall over. At most, the *Ferguson* case would operate as notice that customers should not sit on pallets. Its circumstances were completely different from the facts presented in this case.

A more analogous case than *Smith* is *Lanny v. City of Akron*, 1994 Ohio App. LEXIS 3734 (9th Dist. 1994). In *Lanny*, the plaintiff was injured when she sat on a chair in a courtroom that broke under her, resulting in injuries. The plaintiff introduced evidence that over a 25-year period, 50-percent of the courtroom's chairs had required repairs. *Id.* at *7. The defendant responded with evidence that the chairs were inspected weekly, and there was no evidence the defendant had notice of a problem with the "particular chair" used by the plaintiff. *Id.* at *8. On these facts, the Court held that summary judgment for the defendant had been properly entered.

Applying *Lanny* to our facts, Plaintiff is required to show that IKEA had notice that *the particular box that struck her* presented a hazard to her, on the exact day when her injuries occurred. She is unable to do so, because there is no evidence regarding who last touched or moved that box. Therefore, as a matter of law, IKEA had no notice of any hazard that caused or contributed to Plaintiffs' injuries.

17

## VI. STORING COUCHES UPRIGHT IS NOT UNREASONABLY DANGEROUS, NOR IS IT A BREACH OF DUTY

Plaintiff contends that storing the Ektorp sofas upright is unreasonably dangerous and constitutes a breach of duty to the Plaintiff. This argument, too, fails.

First, all of the anti-tipping measures described by the Plaintiff, and by her expert, Kevin Rider, are applicable to the display items or items in storage or transit, not items that are made available for customers to pick up and purchase. Bookcases, for example, must be secured, otherwise children may attempt to use them as ladders. The same risk is not presented by a cardboard box; moreover, customers are not invited to remove display items, but they are invited to remove and purchase items in the warehouse.

Mr. Rider's opinions regarding a retail environment should not even be considered by this Court, because he does not have relevant expertise in this area. The United States Supreme Court and Circuit Courts of Appeal have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise, or that are not founded on a reliable methodology. See e.g., *Kumho Tire Co. v. Carmichael* (1999), 526 U.S. 137 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); *Weisgram v. Marley Company*, 169 F.3d 514, 418 (8th Cir. 1999) (holding that a city fire captain, although qualified as an expert on fire investigation, and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to the sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon

breast implant case); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs from a trim press).

Additionally, Rider's opinions regarding retail practices should be excluded because his opinions do not meet the foundational requisites established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, (1993), 509 U.S. 579. The *Daubert* reliability analysis applied not only to scientific testimony, but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The opinions offered by Rider are not applicable to a retail environment. *See* Affidavit of Jerry Birnbach, attached hereto as Exhibit G, at ¶¶ 6-8. The standards used by Rider in his Affidavit and Report are not retail standards, and certainly not standards applicable to the warehouse sales area of a store like IKEA. *See id.* These opinions should thus be disregarded by the Court.

In support of her argument that the display was "unreasonably dangerous," Plaintiff cites *Hansen v. Wal-Mart Stores, Inc.*, 2008-Ohio-2477 (4th Dist. App.). *Hansen* actually supports IKEA's argument. The key portion of *Hansen* is as follows:

> Wal-Mart could be liable if it stacked the screened houses in a manner in which it was reasonably foreseeable that another customer would dislodge them and make the display unstable and dangerous. However, none of the evidence relied on by the Hansens shows that the stacks were unstable at the time that they collapsed. Moreover, they have not put forward any evidence to show that the stacks were rendered unstable by other customers or that Wal-Mart failed to conduct a reasonable inspection of the stacks. The Hansens merely speculate that was the case. However, speculation or conjecture is not enough; they must point to some facts in the record.

*Id.* at ¶ 16. Here, the facts are even more compelling in IKEA's favor than in *Hansen*. The merchandise at issue, i.e. the boxes of Ektorp sofas, was not "stacked" at all; instead, it was arranged in a single level for purchase. Therefore, the *Hansen* case is not even applicable to the facts presented here.

Plaintiff attaches a portion of IKEA's U.S. Safety and Security Retail Operations Manual, Exhibit 5 to her brief, but this is irrelevant because it refers, by its own terms, to the "Showroom and displays" in an IKEA store, not to the warehouse. Doc. No. 25-5, PAGEID # 835. Similarly, Kevin Rider relies on irrelevant NSC and NIOSH standards, which do not address safety of products made available for sale in a retail environment. To the contrary, IKEA's expert, Jerry Birnbach, demonstrated that IKEA's self-service warehouse is operated in complete accordance with all applicable standards of care. *See* Birnbach Affidavit, Ex. G, at ¶¶ 1-5.

## VII.  <u>CONCLUSION</u>

IKEA stands by its Proposed Undisputed Facts submitted with its Motion for Summary Judgment. Based upon those facts andfFor all of the foregoing reasons, IKEA is entitled to summary judgment.

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By:/s/Samuel G. Casolari, Jr.
SAMUEL G. CASOLARI, JR. (0034410)
312 Elm St. Suite 1850
Cincinnati, OH 45202
P: (513) 372-6802
F: (513) 372-6801
Email:  sgcasolari@mdwcg.com
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

Parties who have access to this Court's electronic filing system will receive notice of this filing by operation of that system. The parties may access this filing through the Court's system.

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: /s/Samuel G. Casolari, Jr.
SAMUEL G. CASOLARI, JR. (0034410)
312 Elm St. Suite 1850
Cincinnati, OH 45202
P: (513) 372-6816
F: (513) 372-6801
Email: sgcasolari@mdwcg.com
*Counsel for Defendant*

Date: February 19, 2019